DIVISION OF TAX APPEALS.

IN THE MATTER OF THE APPEAL OF CITY OF EAST ORANGE, v. CHURCH OF OUR LADY OF THE MOST BLESSED SACRAMENT, FOR THE YEAR 1944.

Decided November 12, 1946.

For the petitioner, *Walter C. Ellis.*

For the respondent, *Elmer F. Holtz.*

CONKLIN, COMMISSIONER. The City of East Orange seeks to restore an assessment for the year 1944 on certain property of the respondent. Originally, this property was assessed by the city as a "parsonage" under the provisions of *R. S.* 54:4–3.6; *N. J. S. A.* 54:4–3.6. On an appeal by the taxpayer to the Essex County Board it was held that the property should be fully exempt as the "building is substantially exclusively used for the religious and educational needs of the church in its religious and educational work." The city offered proof of value of the building at $17,000, and asks the restoration of the assessment, less an exemption of $5,000 as a parsonage.

The building in question is located at 113 Elmwood Avenue, East Orange, contiguous to the church and school, and stands on the same land. The land is not assessed.

The entire church property is located on the south side of Elmwood Avenue, and occupies the block between Shepard Avenue and Madonna Place. On the northwest corner of the plot is located the parochial school, supervised by the priest of the parish. On the northeast corner is the church proper. To the south, or to the rear of the church, is the convent where the teaching nuns live, which convent is joined to the church building by a passageway. The building in question, referred to as the "rectory," is located between the church building and the school, and is joined to the church by a passageway which appears to be part of one of the rooms of the building.

The property was carefully described by the pastor, who was the witness for the respondent church.

The building is three stories in height. The first floor contains six rooms, closets, a public toilet and a hallway. There is a dining room used by the priests, a kitchen, and an employees' rest room. At the front of the building are two rooms used as business offices for the church and parochial school. At the front and on the church side is a large room, used as a Sunday school room for small children, for the performance of wedding ceremonies, and which by reason of the construction of the passage, is used to accommodate overflow crowds at the Sunday masses. The passageway to the church is part of one end of this room.

The second floor contains the pastor's bedroom, two bedrooms for employees, a room used for storage of church material, and an office. This office is used by the pastor, and as a place of storage for church and school records. It is also used by the trustees as a meeting room.

On the third floor is a bedroom for the pastor's assistant, another for visiting priests, and three other rooms. One is used by the Society of St. Vincent de Paul for its activities. Another is used for the storage of church property. There is also a room used as an office and meeting place of various groups attached to the church.

The church building was constructed without a cellar; therefore, it was necessary to find another means of storage space and space in the rectory was used. The parochial school

expanded to an enrollment of 380 students, and as it became necessary to use the principal's office as a classroom, he moved his office to the rectory. Of these facts there can be no dispute, as the assessor considered them in his valuation.

On page 42 of the transcript of testimony the assessor, Mr. Herbert L. Van Derbeck, testified as follows: "*Q*. Did you make any allowance in the assessment for educational or school purposes? *A*. Yes. That place would be assessed at at least $25,000 as a private home. *Q*. You have just testified before that the true value is $17,000? *A*. That's right. I said as a private home it would be at least $25.000."

The testimony offered on behalf of the petitioner city was not contradictory as to the use of the property. Original plans of 1927 were offered by the city, but they did not show the use of portions of the building as of the assessing date.

Revised Statutes 54:4–3.6; *N. J. S. A.* 54:4–3.6, provides in part:

"The following property shall be exempt from taxation under this chapter: * * * all buildings actually and exclusively used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, or for religious, charitable or hospital purposes, or for one or more such purposes; * * * the building actually occupied as a parsonage by the officiating clergyman of any religious corporation of this state, to an amount not exceeding five thousand dollars ($5,000) * * *."

The two pertinent sections of the statute in dispute are quoted above. The first part exempts "all buildings *actually and exclusively* used * * * for religious purposes." The second part, "the building *actually occupied* as a parsonage."

There should be no difficulty in the application of these provisions. The property in question must fall into one category or the other. Bouvier defines a parsonage as "the house set apart for the minister's residence. A portion of the land and tithes established by law for the maintenance of a minister." According to the undisputed proof, this property was more than actually occupied as a parsonage. It was actually and exclusively used for religious purposes.

This case is even stronger than *City of Jersey City* v. *Beth-El Baptist Church,* 18 *N. J. Mis. R.* 208; 12 *Atl. Rep.* (*2d*) 152, for here the pastor does not use the building for a family home, as do Protestant ministers.

We are mindful of the fact that these questions had been previously raised at a hearing by Commissioner Kreamer, reported in 21 *N. J. Mis. R.* 374; 34 *Atl. Rep.* (*2d*) 297. The opinion so reported would not be *res adjudicata,* as this Division would not be concluded by its determination for previous years, each annual assessment being a separate entity distinct from the assessments for other years. See *Continental Purchasing Co.* v. *City of Newark,* 18 *N. J. Mis. R.* 240; 12 *Atl. Rep.* (*2d*) 133. Nor would a reading of the opinion by Commissioner Kreamer in the case reported in 21 *N. J. Mis. R.* 374; 34 *Atl. Rep.* (*2d*) 297, indicate the proofs to be the same as those in the instant case.

It does not appear to us that any principle of statutory construction should operate to deprive the respondent of tax exemption, obviously intended by the legislature in such a situation, by mere reason that a building serves in part as a parsonage. *Jersey City* v. *Beth-El Baptist Church, supra.*

The fact that the building is used as a parsonage (the residential use incident to the performance of the exempt activities) is not such a use as would defeat total exemption. *Piscataway Township* v. *State Board of Tax Appeals,* 131 *N. J. L.* 158; 35 *Atl. Rep.* (*2d*) 711; affirming 129 *N. J. L.* 261; 29 *Atl. Rep.* (*2d*) 389.

Obviously the statute, *R. S.* 54:4–3.6; *N. J. S. A.* 54:4–3.6 covers two or more categories and so the educational use of the building has not been discussed.

Under the proofs, we feel that the respondent is entitled to all the benefits of *R. S.* 54:4–3.6; *N. J. S. A.* 54:4–3.6, and the action of the County Board of Taxation is affirmed.